No. 242108. Council, you may proceed. Good morning, Your Honors. Council, my name is Amanda Skinner, and I'm here on behalf of Mr. Candelaria. I'd like to try to reserve two minutes for rebuttal. We briefed two issues in this appeal, and I'd like to just briefly touch on the District Court's denial of the motion to suppress the government briefed two additional grounds in support of what this Court can affirm on alternative grounds when the District Court record is adequately preserved. But this record isn't developed enough as to either of the alternative grounds cited by the government. First, the government cites corral in support of the foregone conclusion doctrine applying. Corral is a very different case. It deals with containers. Are these containers opaque? It's in a vehicle that is stopped in an investigatory stop after an undercover buy basically gets busted up. These are wildly different circumstances in Mr. Candelaria's case. And similarly, for the automobile exception, the government would need to show that the vehicle was lawfully in police custody and that there was probable cause to believe that contraband was in the vehicle. First, Mr. Candelaria, I agree, didn't challenge lawful police custody. But at the same time, the District Court didn't make an affirmative finding that the impound was lawful. And additionally, the note in question isn't necessarily contraband on this record. It's not an identical note to the note that was described in the bank robbery case. It was shorter, had far less detail. So just on those issues, Your Honors, we don't believe that the record is developed enough for the Court to rely on either of those exceptions if you were to find that Mr. Candelaria prevailed on the other issues with respect to that. But we don't need to go there if we think that there's either actual or apparent authority for the wife to consent to this search. Agreed, Your Honor. And, you know, I think those issues were well briefed by the parties. But I would just say that, you know, for support for our argument, I think Rith makes it clear that it's an extremely fact-specific inquiry. You know, in Rith, if there had been evidence that the parents were not ever going into their 18-year-old son's room without permission, that's something that may have made Rith prevail. Here, it's interesting because, yes, we have a married couple. Yes, we have a car that's, you know, kept on the property. But each parent has their own car seat in the vehicle that they use for their child. The testimony was maybe anywhere from one to three times the wife had driven this vehicle. But she had, I mean, it was, she owned it. And so did... She was the primary insured. She made the car payments. She had a key that she could use to access it. And don't we start in Rith with a presumption that she has actual authority because they're married? And isn't it your burden to rebut that presumption? Yes, Your Honor. And I think in terms of the evidence to rebut that, we had testimony that she would never use that car without first coordinating with Mr. Candelaria. So that's sort of what we hang our hats on in terms of the suppression argument. Turning to the... The fact that she would coordinate with him doesn't mean that, you know, if she thought she left something in the car, she couldn't go enter the car without his permission and search for it, does it? No, but that's not the testimony in this case. And so that's why I think Rith is so constructive. It's extremely fact-specific. And the government did not pull out any testimony that she had ever left anything in the car, that there was anything other than a car seat. And there was testimony that Mr. Candelaria contributed to household expenses to include the coverage for that car because it was purchased for him. That much was clear. Ms. Skinner, can I ask you a question? Just hypothetically, let's say my wife and I have a Volkswagen Jetta, and it's my wife's... My wife drives it, and then I... But I have... You know, if my wife tells me I can drive it, then that's okay. But then we get separated. We're estranged. And in that separation, I get the Jetta. And then... To me... And then I say, my wife isn't, you know, going to be able to drive that. And so do we look... And then the cars get searched. And I say, okay, you can search it, and they find incriminating evidence against my wife. Is it... Do we look at actual control at the time that I give the consent to the search, or do we look at it at some preceding time when I was hunky-dory in my household? That's a good question, Your Honor. And I think in your hypothetical, if you actually received that car in a settlement, I think it would be your call. There's nothing in this case that says that Mr. Candelaria lost the access he previously had simply because it was impounded. And it was taken when he was driving it, not his wife. So I think, you know, our issue with this is that there's more investigation that the federal agent should have done. Let me play devil's advocate. At the time that the officer asks Megan if she would consent, my understanding is that he talked to the owner of the impound lot, and he said Mr. Candelaria cannot get that vehicle out of impound. Only Megan can get the vehicle out of impound. So is it really different from my hypothetical if Candelaria, even if it was his vehicle, if he was not going to be able to drive that vehicle away and only Megan could get it out? I think that it is different because in Mr. Candelaria's situation, his use of the vehicle over that period of time that they had it is what gives him the right to say no to a search. So he never lost that simply because it was impounded and his name wasn't listed as the owner. That would be my answer to that. Thank you. Turning to the sentence itself, this court should remand for resentencing on this record. In Cookson and Crosby, this court has made it clear that a lack of explanation hinders substantive reasonableness review. Can I just ask you a threshold question? Because it sounds like you're moving into substantive reasonableness. Are you still on appeal challenging procedural reasonableness? Yes, we are. I didn't see much of that in your brief. The reason, I'm not going to wave it, Your Honor, but I wanted to focus the discussion on substantive reasonableness because the result is the same, and I acknowledge I think it's our stronger argument in light of Cookson and Crosby. This is not a situation like many of the typical substantive reasonableness reviews that we bring before this court and often lose on behalf of our clients. We're not talking about 40 months, 6 months, 12 months for someone who had a really lengthy criminal history that wasn't counted and maybe the district court just sort of gave a comment about I've considered all the factors and this court affirms. In Crosby, we were talking about a 78-month downward variance to time served. In this case, we're talking about a 255-month upward variance, and the discussion by the district court in Crosby is remarkably similar to the discussion by the district court judge in Mr. Condelaria's case. Heavy focus on nature and circumstances of the events, history and characteristics of Mr. Condelaria, deterrence and restitution. Very similar in Crosby. Well, I think there are some differences here. I mean, the district court focuses on you're comparing this with other bank fraud cases, and the district court says that this is far outside the heartland of the typical bank fraud cases, and it looks at the behavior here and that a major, it says a major variance is justified here because of that unusual behavior that had nothing to do with a typical bank fraud case. So I think that if the district court had then also addressed why the sentencing disparity was warranted, we wouldn't But it did. It said it's not within the heartland of these other cases, and it's sui generis. But that comment doesn't allow this court to evaluate why a 255-month variance was necessary when perhaps a 230-month upward variance would have sufficed. Do we require that, that kind of detail? No, Your Honor. A 250 to a 230, and please tell us why. No, Your Honor, but in Crosby, and I listened to that argument yesterday, Judge McHugh, because you and I were on that, the panel consistently focused me back on where is the explanation, and here we have no discussion of the need to avoid the need, the need to avoid unwarranted sentencing disparities or the guideline range. In Crosby, at 1252 or 1245, the court included a paragraph and a half from the district court judge on what he said in that case, and he discussed a significant policy disagreement with the guidelines. Big discussion. There was also a expert evaluation of Mr. Crosby. Is that what the judge here was talking about? It seems like what the judge here is saying is this is no ordinary bank fraud. You just don't see this kind of permanent injury to the victim. In a bank fraud, usually it's, you know, somebody has lied on a loan application or something like that, but here we have someone who is disabled for life. Why can't that be a valid reason for a disparate sentence? It can be a reason, but this court needs to evaluate whether the amount was appropriate, and in Crosby, Mr. Crosby was an extremely unique defendant, a military member, undiagnosed autistic, not knowing he was autistic when the offense occurred. Well, does every case require some sort of statistical analysis? No, but when a major variance is imposed, Your Honor, 255 months, there should be at least a comment from the district court judge about how this also avoids an unwarranted sentencing disparity, and I'd point the court to the Jason data. We're a Jason pilot project district. You've got the data, but does a court, and the data in a given case may be quite relevant and important, but is that the only basis on which an upward variance can be justified? No, but without any comment, one of the issues in Crosby was no discussion of general deterrence, and in this case, we have no discussion of the need to avoid unwarranted sentencing disparities. Again, I think on remand, this is potentially very fixable for the district court judge, but this is a massive variance when the Jason data tells us that the- Well, if it's so fixable, isn't the bottom line in these substantive reasonableness cases whether the sentence is manifestly unreasonable? How is this sentence manifestly unreasonable? So I think the sentence is manifestly unreasonable because the sentencing transcript shows that the district court judge believed Mr. Candelaria committed the home invasion, and there is zero evidence for that in the record. Probation, the government, and the victim all agreed it was not Mr. Candelaria, and at the sentencing hearing, three separate times- Did he do that, or did he consider the assault to be relevant conduct? So if the assault was- even if the assault was somehow separately charged, the guideline range- Not separately charged, relevant conduct. And that was included for an enhancement under the guidelines. It could have, you know, accounted for some of the variance. Again, I do think it's the same as Crosby because there was a developed record there uncontested by the government that could have supported that 78-month downward variance to time served. But in this case, we have an inconsistent explanation by the district court because three separate times, at 96, 101, and 102, the district court went out of its way to say something about the home invasion, saying, if you did not do it yourself. And again, it's at 96- And that's consistent with what he's saying. Even though you didn't personally go commit this violent act, you are responsible. You got the check that the man was forced to write, and you were at the bank cashing the check while the guy's on the floor almost dying. What's wrong with that? And I would still argue that the court needs to address an unwarranted sentencing disparity when you're sending someone upwards of 255 additional months. But I'd ask the court to look at the quotes that we're pulling out. The district court stated, you have conspired with an unknown individual to rob and assault John Doe if you did not do it yourself. I don't read that as even though you didn't do it yourself. It is very clear that the district court judge is saying, I think that you did this. There's no support in that for the record. So even just a remand on that issue would be appropriate. I don't read that that way. I think he's saying, if you didn't do it yourself, you're equally responsible. Meaning, you know, I don't think there was any confusion that he himself didn't do it, but that it was a conspiracy to do it. And I understand that, Your Honor. We read it a different way. And I think that without an explanation as to the extent of that variance addressing, that's a major factor. We're a JSON pilot project district because that data is supposed to be relevant. Again, the district court could have made really even a throwaway comment about why something this high was warranted. But on this record, I think it's difficult for the court to review where the 255-month increase came from. Thank you. Thank you, counsel. Good morning, Your Honors. Counsel, may it please the court, I'm James Braun on behalf of the United States. This court should affirm the district court's denial of the defendant's motion to suppress and its imposition of a 26-year sentence based on conduct that the court justifiably believed to be vile, egregious, and truly horrifying. If I could start briefly with the suppression issue and actual consent or actual authority to consent. Before you, and I hate to do this to you, but before you get into this, there was just a factual question that I want to make sure that I understood. The Santa Fe, as I understand it, and tell me if I'm wrong about this because I don't think the briefing addresses it. As I understand it, the Santa Fe police got a warrant to search the car in connection with the investigation over the bank robbery. The bank fraud. Over the bank fraud. And then they obtained a warrant to get into the vehicle and got the physical copy of that handwritten note. That's right. And for some reason, they put it back. Right. And here we are. And I don't think you've argued this, but does the defendant have a reasonable expectation of privacy in a vehicle to protect against the detection of the contents of a handwritten note when a judge has already issued a warrant in connection with another investigation? I don't even understand why you all needed to get consent to search the vehicle. Why didn't you just get it from the Santa Fe police? A copy for the Santa Fe police. Right. We don't believe they did need, that the officers did need consent. And standing could possibly be an issue. We lightly touched on that in the brief with regard to a parent authority because at that point, the defendant wasn't making any payments on the vehicle. It was really his wife's vehicle, and there's a question about even standing. There is an issue about if something is seen in plain sight during the execution of a warrant, say in a home, and officers leave it behind, leave the home, there's a question about whether they can just go back in and take what they saw after they've left. A vehicle obviously is different, but that's why we have the vehicle exception, and we've argued that in our brief. We've also argued just a foregone conclusion because they know it's in there. They saw it. The car is in impoundment. There's nobody else who can come get it. There's no reason they shouldn't be able to just go get it, and we have argued that under those two exceptions that weren't argued below. But dealing with the record that we have and the arguments that were made, the primary focus there was consent and actual authority because that's what the agent did, and because that made the most sense in that moment. He was going to interview her. The officers had put the Santa Fe police officers had left the note in the visor, and the easiest, cleanest thing to do was just get the owner's consent. And as far as the agent knew, it's the wife. She's the registered owner. There's no issue with obtaining her consent. She does have actual authority. Under our law, there was a presumption that she had authority, actual authority, right? Right. If you want to rebut that presumption, who has the burden? The defendant has the burden. So the argument that in RIF they had evidence that the parents didn't go into the bedroom and this and that, that would have been Mr. Candelaria's obligation to put on that kind of evidence, right? Right. Okay, and I think the argument is that the evidence that was put on, that she didn't take the car without his permission, that they each had a car seat in their own vehicle, that that was enough to rebut the presumption. How do you respond to that? Well, really, under RIF, there are two flavors, two varieties of actual authority. One is the joint access, and that's where the court found, the district court here found that she's the registered owner and all of those things. The other is control for most purposes. And what RIF says is that's not the fact-intensive inquiry. That's more of a normative inquiry based on the relationship. And because of the husband-wife relationship, there is that presumption. And there you don't look at necessarily the use of the vehicle and how often she used it and all of that. It's whether to rebut the presumption, it would be whether there's evidence of an agreement that that was off limits to her. You know, basically that they had agreed or they understood she doesn't go there. She doesn't look in that vehicle. She doesn't touch it. It would be the same as if the defendant had a safe in the house, and he had told her, I don't want you going in there. That's my safe. Then that would probably rebut the presumption of actual authority. But here we have actually the opposite. We have Megan Henley actually testifying, there were no limits on my access to it. Yes, I had to coordinate if I was going to use it. And that makes sense because he's primarily the one to use it. If she's going to take it, she needs to talk to him about it. But she didn't have to ask for permission to go look for something in the car. And she clearly testified to that. And that's enough to affirm the presumption, really, much less for the defendant to rebut it. Well, maybe Ken Laurie, you know, once they were estranged, maybe he changed his mind and said, Megan, you know, now that we're on the track to getting a divorce, you're not getting into that yet. Well, that's where the standing comes into play. Because on the facts of this case, there's absolutely no basis for him to say that. He didn't pay for the car. He's not the registered owner. Santa Fe Police isn't going to give it to him if he tries to come get it. He's basically walked away from it at that point. And that's why when Ms. Henley was asked. Let me just play devil's advocate. Does the owner of the impound lot have the power to adjudicate a domestic dispute? I mean, in other words, the owner of the impound lot can say, okay, well, only Megan can get into it. But, you know, unless the owner of the impound lot, you know, moonlights as a domestic court judge, who is he or she to say who has access to that Jetta? Well, I would imagine what they were going by is who's the registered owner, and it was her. Okay. So I think on those facts, there was a justification for them to say that. And the reality is he had walked away from it. And that's why she's the one who took it back. She paid the impound lot, and then she sold it. Because it was her vehicle, really. And the court doesn't need to go beyond there. Actual authority is enough. The district court correctly found that. And this court can affirm on that basis alone. We, of course, have made several other arguments that would justify the denial of the suppression motion. But we would certainly stand on that for argument purposes. Turning to substantive reasonableness, if we're ready. Is this case the same as Crosby, but the opposite side? It's not. And why not? Well, what the defendant does is they take a part of Crosby, the part that discusses 3553A6, and basically treat that as the entire holding, that that would have been a standalone reason for this court to reverse in Crosby, and it wasn't. What the court clearly said in Crosby is the district court's failure to along with its over-reliance on one factor, really on the defendant's rehabilitation, is what made that a substantively unreasonable sentence. And what here we have is really the opposite of that, where this is one factor the court didn't specifically discuss. It discussed many other factors. Starting with the nature of the offense. The court went to great lengths to discuss the nature of the offense, how egregious it was, what a violation of trust it was, the lasting damage that the defendant's conduct did to Mr. Henley. And the court had heard from four witnesses at sentencing. This was not some slapdash sentencing hearing. This was a lengthy sentencing hearing where the court heard from witnesses, heard from Mr. Henley, and she had also heard from him at trial, heard from the bank employees, heard from Mr. Henley's brother about the lasting damage. So all of that went into the nature of the offense. Then you look at the characteristics and history of the defendant. She went to great lengths to talk about that, his criminal history and how it was actually underrepresented because of the things he had done in the past, including a prior conviction related to the McDonald's that he had worked at that was eerily similar to this case. And the judge talked about that. She talked about how during his pretrial release he had committed a DUI and lied about that to the probation officer. And so that obviously factored into it, the ability for him to be rehabilitated, where she found that he had no remorse. The court looked at safety of the community. And the fact that having no remorse, having this history of similar conduct where he's going to take what he wants, the judge said something like that, that's going to continue to happen. And that was a factor for the court to consider. So all of those things at length the court considered. Are you familiar with our recent case of the United States versus Washington? I don't believe I am. I'm happy to try and answer a question, but I'm not. So that's how this case is so different from Crosby because the court here discussed so many of the factors and didn't discuss that one. And so really what the defense hangs their hat on is the idea that it's procedurally unreasonable and therefore substantively unreasonable for the court not to discuss every single factor. And that's simply not the law. The district court has to consider every factor. And here the district court clearly said that it did. Did the court not address 3553A6 on sentencing disparity? Well, the court said that it considered it. Not that one specifically, but had considered all of the 3553A factors. I think we have to take the court at its word for that. Absent a specific argument like in Lentia, a specific argument from the defense related to sentencing disparities. If the defendant had said, this will create a sentencing disparity and the district court had ignored that, then we might have a different case, but that's not what happened here. And absent a specific argument from the defense, the court isn't required to discuss every single 3553A factor. Well, is it possible for a court's discussion of the nature of the offense to be relevant to the sentencing disparity issue? In other words, here we have, as the court pointed out, an extraordinary type of bank fraud offense in terms of what happened. Does that in and of itself speak to sentencing disparity? I think it does. And going to Gant, which we cited in the brief, the court said that one can say as a general rule that when a court considers what the guideline range is, it necessarily considers whether there is a disparity between the defendant's sentence and the sentences imposed on others. So you have that sentence from Gant. The court specifically noted the guideline range 46 to 57 and then said it fell outside the heartland. Isn't that a consideration of the disparity? It is. It's not citing to 3553A6, but it certainly is considering the disparity that's created and saying it's warranted. It's warranted by the egregious nature of this case. It's warranted by the fact that this case is so far outside of the guidelines that that justifies this substantial variance. And so given all of the lengthy explanation that the court gave considering a number of factors, the fact that the court didn't specifically cite to A6 is not procedural error, and that would have to be plain error, of course, on this case, nor is it substantively unreasonable. Unless the court has any questions, we would ask that the court affirm. Thank you. Ms. Skinner, I think you have six seconds. Do you want to take them? I'll take them. Okay. Good luck. Good for you. Oh, seven seconds. Thank you. All right. With respect to history and characteristics, it was not enough in Crosby that the district court, I'm sorry, with the sentencing disparity, it was not enough that the district court said I've considered the factors. That was a 78-month variance. This is 255 months, and there's no discussion of the real sentencing disparity and also the guideline range, just simply stating the guideline range and then imposing a 255-month variance that relies heavily on history and characteristics and an 05 juvenile conviction does not allow this court to do meaningful review. Thank you. Thank you. We'll consider this case submitted and counselor excused. Thank you for your time.